**Decided February 28, 1983**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

CRESENCIO P. PABLO,       )  .       CIVIL ACTION NO. 82-13
                         )
        Plaintiff,       )
                         )
    vs.                  )           MEMORANDUM OPINION
                         )
NORTHERN MARIANA ISLANDS )
BOARD OF ELECTIONS,      )
                         )
        Defendant.       )
_____)

At issue in this case is whether the decision of the
Board of Elections denying the plaintiff the privilege of
voting in the 1979 Commonwealth elections should or should
not be overturned.[1]  The matter is still ripe because of future
elections.

## BACKGROUND

The plaintiff was born in the Philippines in 1929.  In
1962 he left the Philippines and worked in Guam as a painter
until 1965 when he came to Saipan where he worked for one
year.  He then returned to the Philippines.

---

[1] The Board of Elections and the election law is established
by Public Law 5-19, enacted into law September 6, 1977.

382

In 1971, the plaintiff re-entered the Commonwealth as an alien worker for a Mr. Albert Camacho. After about one year with Mr. Camacho, the plaintiff transferred over to a new employer, Mr. Francisco Guerrero. He next changed employers in 1976 when he commenced working for the Continental (now Hyatt) Hotel where he has been employed to the present time.

During the years from 1971 - 1977, the plaintiff was able to work because he held a work permit issued pursuant to Titles 49 and 53 of the Trust Territory Code and which was renewed on an annual basis.

In 1977, the plaintiff executed an "Oath of Renunciation" which in effect, renounced his Philippine citizenship in order to comply with Section 301(c) of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States (Covenant) and Section 3(c) of the Schedule on Transitional Matters attached to the Constitution of the Northern Mariana Islands.

On September 9, 1978 the plaintiff's Philippine passport expired and after his work permit expired subsequent to the execution of the Oath of Renunciation, the plaintiff has not been issued any other work permits.

From the period of 1971 to the present, the plaintiff left the Commonwealth on three occasions. He went to the

Philippines for two weeks to attend his daughter's wedding; he went to Guam to purchase materials for his employer and he traveled to Truk on a similar mission. The last two trips were for two to three days.

In 1977, the plaintiff attempted to register to vote but registration was closed. In 1979, he filled out a data sheet (Defendant's Exhibit A) and applied to register to vote and was rejected. He appealed the rejection to the Board of Elections which held a hearing and on December 28, 1979 the Board rendered its decision.[2] Its conclusion was:

> "That the Applicant (plaintiff) has not sustained the burden of proof on his claim of compliance with Section 8(c) of the Schedule of Transitional Matters of the Constitution of the Northern Mariana Islands."

## DISCUSSION

The plaintiff attacks the decision of the Board pursuant to the provisions of 17 TTC §12 and asserts the decision is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; is contrary to constitutional right, power, privilege, and immunity and is not supported by substantial evidence. 17 TTC §12(b)(i)(ii)(v).

---

[2] The decision is attached hereto as Appendix "A".

The defendant argues that: (1) deference must be given to the findings of the Board and, (2) the plaintiff has failed to prove his domicile in the Northern Mariana Islands. The second defense is broken down into two parts. First, it is asserted the data sheet (Defendant's Exhibit A), signed by the plaintiff, supports the findings of the Board. Second, since the plaintiff was in the Commonwealth only on a year to year basis pursuant to Titles 49 and 53, he could not have acquired a domicile in the Commonwealth.

This is a review of an administrative agency order and the court can only overturn the decision upon finding grounds exist in 17 TTC §12. The court cannot substitute its findings for that of the Board but must review the decision, giving deference to the Board's findings and decision. However, the court is somewhat restricted in this matter because there is no transcript or record of the proceedings other than the data sheet (Defendant's Exhibit A) and the Board's decision. The tape of the hearing has been erased and consequently both sides have approached the review in the form of a trial de novo.

The basis for the defendant's findings of non-domiciliary are certain answers found in Defendant's Exhibit A. The defendant argues that this demonstrates the plaintiff has a permanent residence in the Philippines. This finding is not substantiated by the evidence and it is clear the plaintiff

has had no permanent residence in the Philippines since 1971. The defendant argues that since the plaintiff listed a foreign address on Defendant's Exhibit A, this leads to a contrary conclusion. This ignores the fact that the plaintiff also listed a local address, had not been in the Philippines in the last several years except for two weeks, does not own a home or property in the Philippines, holds a Northern Mariana Islands drivers license but no Philippines license, has not paid Philippines taxes since 1977 and has not voted in the Philippines.[3]

Succinctly stated, everything points to the plaintiff having established a domicile in the Northern Mariana Islands in the early 1970's except for the fact that he entered the Northern Mariana Islands on an annual work permit basis which meant that he could be required to leave upon the expiration of the permit. This situation is addressed in Section 6(c)(6) of Public Law 5-19 which states:

---

[3] It is noted the plaintiff marked on Defendant's Exhibit A he owned a house in the Philippines. His testimony at trial was that he did not own any property in the Philippines. Any house and lot referred to belonged to his ex-wife.
The defendant has also stressed the fact that the plaintiff has supported various members of his family over the years and is still supporting his youngest daughter by sending money to her in the Philippines. How and in what way this establishes the plaintiff's domicile in the Philippines is not perceived by the Court.

"(6)  Any person, whose presence or residence in the Northern Mariana Islands on, and prior to the effective date of the Constitution (1/9/78), is based on a work permit or any other temporary permit is not domiciled in the Northern Mariana Islands."

This would seemingly dispose of plaintiff's contention that he acquired domicile in the Northern Mariana Islands since he clearly fits into the description.  However, Section 6(c)(6) has had a difficult time surviving legal assaults on its provisions.

In High Court Civil Action 225-77, <u>White v Government of the Northern Mariana Islands</u>, the trial division effectively struck down the provision as being contrary to the equal protection provisions of 1 TTC §7 and Article I, Section 6 of the Constitution of the Northern Mariana Islands.

Subsequently, the District Court for the Northern Mariana Islands, in the case of <u>Pangelinan v Castro</u>, Civil Action 79-06, held essentially the same as did the High Court in <u>White</u>, supra.  <u>Pangelinan</u> was appealed to the Ninth Circuit Court of Appeals and affirmed at 688 F.2d 610.  The latter opinion does not address the specific issue raised here but the District Court fairly extensively explored it.  Slip Opinion pp. 16 to 23.

It would unduly lengthen this opinion to reiterate what was said in the opinion of the District Court.  Suffice to say, this court agrees with its reasoning and conclusions.

It should be added that this court perceives an additional basis for the holding that Section 6(c)(6) does not bar the plaintiff from establishing domicile.

The seed for the "Oath of Renunciation" signed by the plaintiff was planted in Section 301 of the Covenant which was signed in February of 1975 and approved by the U.S. Congress in March of 1976. The people of the Northern Mariana Islands, by plebiscite, also approved the Covenant. The Constitution of the Northern Mariana Islands was approved on March 6, 1977 and it, in effect, implemented §301 of the Covenant in Section 8(c) of the Schedule of Transitional Matters.

Read together, these two provisions contemplated, indeed intended, to address the problem of non-Trust Territory citizens who had lived in the Commonwealth prior to January 1, 1974 under all situations. It is noteworthy that neither the Covenant nor the Constitution made any exception for persons present in the Northern Mariana Islands by virtue of work permits. In fact, a substantial number of aliens affected by Section 301 of the Covenant and Section 8(c) of the Constitution had to be persons admitted into the Commonwealth via Titles 49 and 53.[4]

---

[4] Counsel for the plaintiff, who was also counsel for the plaintiffs in _Pangelinan_ estimated that a high percentage of the plaintiffs in _Pangelinan_ were in the Northern Mariana Islands pursuant to the provision of Titles 49 and 53. There was no dispute by the defendant to this assertion. Defendant's Exhibit B lists the persons filing an Oath of Renunciation with the Attorney General's Office. Most of the names appear to be Filipinos. Title 49, the Resident Workers Act, was enacted in 1969 and it is assumed that the Government enforced its provisions as it did in the case of the plaintiff.

388

Thus, when Section 6(c)(6) was passed in September of 1977, it was in direct conflict with the intent and design of the Covenant and Constitution. The Covenant and Constitution led the plaintiff down the path of renouncing his allegiance to the Philippines and allowing his passport to expire but then Public Law 5-19, Section 6(c)(6) would ostensibly pull the rug from underneath him and leaving him, possibly, a man with no country and certainly a man with no vote. Such a result will not be reached here.

IT IS CONCLUDED that the decision of the Board of Elections must be overturned because it is not in accordance with law, the findings are not supported by substantial evidence and the findings and conclusion are unwarranted by the facts as derived from Defendant's Exhibit A, the testimony heard by the court and the exhibits admitted into evidence.

An appropriate judgment shall issue. This opinion shall constitute the Findings of Fact and Conclusions of Law of the court pursuant to Com. R. Civ. P. 52(a).

Dated at Saipan, CM, this 28th day of February, 1983.

_____
Robert A. Hefner, Chief Judge